IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **JOHNATHON LEE CASH,** | ) | Civil Action No. 7:12cv00169 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **WALTER TOWNLEY,** *et al.*, | ) | By: Norman K. Moon |
| Defendants. | ) | United States District Judge |

Plaintiff Johnathon Lee Cash, a Virginia inmate proceeding *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging various constitutional violations stemming from his work with the road crew. Defendants have filed a motion for summary judgment and Cash has filed a response in opposition thereto, making this matter ripe for disposition. For the reasons stated herein, I will grant defendants' motion for summary judgment.

**I.**

Cash alleges that he is "legally blind in both eyes" and that, while incarcerated at Halifax Correctional Unit ("Halifax"), he was assigned to work on the road crew. While working with the road crew, Cash alleges that a tree fell and injured him. Cash suffered ongoing neck and back pain over the next several months while incarcerated at Halifax.

According to Major Carter's affidavit, Halifax is considered a "work camp," which means that prisoners are expected to work in some capacity while incarcerated there. However, when a prisoner suffers a medical condition that interferes with his ability to perform work, prisoners are exempted from working, given a "lay-in" from working, and/or assigned certain kinds of work. It is the discretion of the institutional physician to change a prisoner's medical code status to indicate that he is not required to work.

Upon his arrival at Halifax on March 1, 2011, Cash was assigned to Counselor Faulkner for his initial orientation and completion of an "in/out" reclassification form. During this process, Faulkner reviewed Cash's file that was forwarded from his previous facility to determine whether to recommend that Cash be allowed to work inside or outside the perimeter based on his criminal history, behavior pattern, and medical status. Faulkner's recommendation that Cash be allowed to work outside the perimeter was then forwarded to Superintendent Townley for approval. Thereafter, the Major or Lieutenant assigned Cash to his actual work duties. Faulkner states that counselors do not have the authority to designate offenders to specific work assignments. Faulkner claims that he was not aware that Cash was blind in either eye during his initial orientation, but that he does recall Cash telling him that he was blind in one eye after he was assigned to work on the road crew. Faulkner informed Cash that he should address his vision concerns with the medical department.

Cash states that he told Nurse Vass that he was blind and she nevertheless cleared him for working with the road crew. Nurse Vass states that when Cash arrived at Halifax, he was already classified as Medical Code A, which signifies that he is eligible to perform any work duties. Nurse Vass further alleges that the only medical problems that Cash indicated he had during his intake medical screening were hypertension and acid reflux. Nowhere in Cash's medical records provided by the defendants is there any indication that Cash had vision problems or was blind in either or both eyes. In support of Cash's assertion that he is "legally blind," Cash submits: a letter from a prisoner at Bland Correctional Facility (where Cash was later incarcerated) stating that Cash has been blind since birth; an incomplete summary of an application that he filed for social security benefits indicating that Cash, by his own account, has been blind since December 31, 2001; and incomplete and unauthenticated medical records from

Deerfield Correctional Center and Bland Correctional Center, all dated after Cash was incarcerated at Halifax, indicating that Cash has macular degeneration in both eyes.

On July 10, 2011, while working on the road crew, Cash alleges that another inmate cut down a tree and Cash did not see it falling. Cash states that a "big side branch" hit him on the top of his head and "drove him to the ground." Cash alleges that the incident "hurt bad as hell," but his "youth" and "lack of common sense" made him "shake it off and continue working." Cash submits no record of this incident and there is no evidence of this incident in the medical records or grievances provided by the defendants.

The next morning, Cash says that he was "very stiff and sore" but he went to work anyway. On July 13, 2011, while working with the road crew, when Cash bent over to pick up a cut branch, he states that he felt a "pop in his neck and back" which caused him to fall over and not be able to get back up. Medical records indicate that the foreman of the road crew called to report the incident to Halifax and advise staff that the road crew attempted to return Cash to the institution, but Cash "cried out in agony," so they transported him to the local hospital's emergency room. At the emergency room, Cash claims that x-rays were inconclusive and that the doctor ordered an MRI that was never performed. Emergency department records from the same day indicate that Cash was admitted on a complaint of an injury to his low back "from pulling on a large branch" which caused a "pop in [his] back." The hospital physician's primary diagnosis was a lumbar strain/sprain. There is no indication in the emergency department records that Cash's x-rays were inconclusive or that an MRI was ordered but not performed. Upon discharge, the doctor prescribed ibuprofen every six hours, instructed that Cash should not work for seven days, and recommended that Cash perform various back exercises. There is no

indication in the emergency department records that Cash had any vision problems or was blind in either eye.

Upon arriving back at Halifax, medical records indicate that Cash was observed walking slowly into the building and holding each leg up for at least a minute without difficulty while his shackles were removed. Consistent with the hospital physician's recommendation, Cash was given a "lay-in" for seven days and not required to report to work.

After a week of rest, Cash states that he was "forced back to work" despite his back still hurting badly. Cash claims that he was "threatened" on a daily basis that if he did not work, he would be "locked in the hole and lose all his good time." Major Carter states that although he did not threaten Cash, he did advise Cash that refusal to work without medical clearance could result in him receiving a disciplinary charge and/or having his class level changed, which would result in the loss of good time or further disciplinary action. Cash states that he went to sick call every morning, hurting so badly that "tears would be coming out of his eyes." He claims that Nurse Vass would just make fun of him and tell him there was nothing wrong with him.

On July 25, 2011, Cash requested an MRI of his back because there was a bone popping in his back. Cash was evaluated by medical staff who observed no popping. Cash was scheduled for an appointment with the institution's physician. The next day, Cash was seen by the physician who noted that Cash complained of pain between his shoulders for two weeks after heavy lifting at work. Cash states that the doctor told him there was nothing wrong with his neck except "stiffness that could be worked out," and that he did not need an MRI. The physician prescribed Flexeril, a muscle relaxant, two times a day for three days.

On August 1, 2011, Cash again requested an MRI because he believed there was something wrong with his back. Cash indicated that the muscle relaxant was not helping him.

Cash was informed that the institution's physician would have to order an MRI and that he had not done so. Nurse Vass states that Cash was observed standing up and sitting down without any discomfort that same day. Later that day, it was reported that Cash had done pushups and then complained of severe pain in his neck area. Cash was transported the emergency department at the local hospital.

Emergency department records for August 1, 2011 indicate that Cash was admitted on a complaint of neck and back pain. Cash told nursing staff that he was walking along when "a bone or something" popped in his neck. The hospital physician's primary diagnosis was muscle spasms of the neck. Upon discharge, the doctor prescribed Flexeril and ibuprofen. Nowhere in the emergency department records is there any indication that Cash had any vision problems or was blind in either eye.

On August 5 and 8, 2011, Cash complained of neck and back pain and again requested an MRI. On August 9, 2011, Cash was seen by the institution's physician who examined Cash and prescribed him Prednisone in decreasing dosage. Cash filed an emergency grievance on August 22, 2011 and an informal complaint on August 23, 2011, indicating that he was still suffering neck pain. Nurse Vass responded and indicated that Cash had been evaluated and that he should follow the doctor's recommendations.

On August 31, 2011, Cash alleges that he was "hurting so bad that he collapsed." Cash laid on the institution's floor and stated that he could not get back up. Lt. Newby states that he had to delay count and outside recreation for forty minutes because Cash would not get up off the floor. Two officers escorted Cash to the local hospital's emergency department. Cash claims that Lt. Newby told him that if they did not find anything wrong with him at the hospital, Newby would write Cash up on an institutional infraction. Emergency department records for that day

indicate that Cash was admitted on a complaint of neck pain. The hospital physician's primary diagnosis was neck pain, but also indicated that his neck x-ray was normal. Upon discharge, the doctor recommended range of motion exercises for his neck and ibuprofen as needed. Nowhere in the emergency department records is there any indication that Cash had any vision problems or was blind in either eye.

Upon returning to Halifax, Lt. Newby charged Cash with delaying and hindering offenders and employees from their regular duties for those forty minutes that he laid on the floor earlier that day. Cash claims that Superintendent Townley used this charge to raise Cash's security level and transfer him to another facility.

Cash claims that defendants Faulkner, Vass, Newby, and Townley were deliberately indifferent to his serious medical need, that Major Carter violated his right to due process by answering an informal complaint that Cash had intended to Townley, that Faulkner interfered with Cash's access to courts, that Vass violated his "right to be free from the pretense of official right to act made by one who has no such right, any acts by him/her when the office does not confer on him/her any such authority," and that Newby and Townley retaliated against him by charging him with "delaying and hindering" which ultimately resulted in his transfer to a different, higher security facility.

As relief, Cash seeks $10 million, an order requiring the defendants to resign without benefits, a declaration that Cash "will be immediately released from custody and have his convictions expunged, and have all of his civil rights restored," and for the court to "attach a lien of attachment to the defendants' savings accounts, all bank accounts, [and] all real estate."

## II.

Cash claims that defendants Counselor Faulkner, Nurse Vass, Lt. Newby, and Superintendent Townley were deliberately indifferent to his serious medical need. It is unclear whether Cash is referring to his alleged blindness or his neck and back injuries as his serious medical need and, therefore, I will address both. I find that Cash has not demonstrated that the defendants were deliberately indifferent to a serious medical need and, consequently, I will dismiss his claim.

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that jail officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Staples v. Va. Dep't of Corr.*, 904 F.Supp. 487, 492 (E.D.Va. 1995). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A prison official is "deliberately indifferent" only if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837. The officer's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Militier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Harris*

*v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). Unsuccessful medical treatment does not give rise to a § 1983 cause of action. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Further, the Eighth Amendment does not require "prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996); *Lewis v. Lappin*, Nos. 3:10cv130, 3:10cv568, and 3:10cv684, 2011 U.S. Dist. LEXIS 120177, at *8 (E.D. Va. 2011). Treatment below the standard of care shows negligence, but negligence is not sufficient to establish a claim of deliberate indifference. *See Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002); *Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir. 1995). Further, questions of medical judgment are not subject to judicial review. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) (citing *Shields v. Kunkel*, 442 F.2d 409 (9th Cir. 1971)). To state a medical treatment claim against non-medical personnel, the plaintiff must demonstrate that the non-medical personnel "were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physician's misconduct." *Lewis v. Angelone*, 926 F.Supp. 69, 73 (W.D. Va. 1996) (citing *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990)).

To the extent Cash argues that the defendants were deliberately indifferent to his serious medical need of blindness, I find that Cash has not demonstrated that he is in fact "legally blind" or that the defendants were actually aware of his alleged blindness. All of the evidence that Cash submits in support of his allegation of blindness is all dated after his incarceration at Halifax. Further, none of the evidence is authenticated and none of it is consistent. The letter from another inmate indicates that Cash has been blind since birth (Cash was born in 1982), Cash's statements in his application for social security benefits indicate that he has only been blind since 2001, and his partial medical records from incarceration after Halifax indicate that he has

8

macular degeneration. Cash's medical records provided by the defendants provide no evidence of any blindness or even vision problems. None of Cash's complaints or grievances even mention any blindness or vision problems. Accordingly, I find that Cash has not demonstrated that he is actually legally blind or that the defendants were deliberately indifferent to his alleged blindness.

To the extent Cash alleges that the defendants were deliberately indifferent to his neck and back injuries and/or pain, I find that Cash has alleged nothing more than a doctor-patient disagreement. In the approximately nine months that Cash was incarcerated at Halifax, he was examined by the institutional physician more than ten times and examined by the emergency department physician three times. Multiple x-rays were taken of Cash's neck and back area, various medicines were prescribed, exercises were recommended, and rest was ordered when appropriate. Although Cash may disagree with the course of treatment he received, his claim is nothing more than a doctor-patient disagreement, which is not actionable under the Eighth Amendment. Further, Defendants Faulkner, Newby, and Townley are not medical personnel and Cash has not demonstrated that any of these defendants were personally involved in the denial of medical treatment, deliberately interfered with the prison physician's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. Accordingly, I find that Cash has not demonstrated that the defendants acted with deliberate indifference and, thus, I will grant defendant's motion for summary judgment.[1]

---

[1] To the extent Cash's allegations can be construed as a claim that defendant Nurse Vass violated his constitutional rights by mocking him, it fails. Verbal harassment or abuse by prison officials in and of itself does not state a constitutional deprivation under § 1983. *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)); *Johnson v. Laham*, 9 F.3d 1543 (4th Cir. 1993). The Constitution does not "protect against all intrusions on one's peace of mind." *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991). Verbal harassment or idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D. N.C. 1990), *aff'd* 917 F.2d 1302 (4th Cir. 1990) (finding that the threatening language of a prison official, even if true, does not amount to constitutional violation); *Bibbo v. Mulhern*, 621 F. Supp. 1018, 1025 (D.

### III.

Cash alleges that Major Carter violated his right to due process by answering an informal complaint that Cash had intended for Superintendent Townley. Cash claims that because Carter answered the informal complaint, Cash's right to due process was delayed. However, Cash does not indicate how any alleged due process right was delayed, much less denied, and it is the intentional deprivation of due process that violates the Constitution. *See Lovelace v. Lee*, 472 F.3d 174, 202 (4th Cir. 2006) ("to establish liability under § 1983, [a plaintiff] must show that the defendants acted intentionally in depriving him of his protected interest"). And generally, "a prison official's failure to comply with . . . grievance procedures is not actionable under Section 1983." *Fisher v. Neale, et al.*, 2010 WL 3603495, at *7 (E.D. Va. Sept. 8, 2010) (citations omitted); *see also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"). Accordingly, Cash's claim concerning the grievance process does not rise to the level of a constitutional violation and I will grant defendants' motion for summary judgment.

### IV.

Cash alleges that Faulkner interfered with Cash's access to courts; however, he provides no facts in support of this claim. Reasonable access by prisoners to both state and federal courts is a guaranteed right, *Ex parte Hull*, 312 U.S. 546 (1941), and states must affirmatively provide inmates with either law libraries or persons trained in law to prosecute habeas and civil rights claims. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977). In making such a claim, a prisoner cannot rely on conclusory allegations. *White v. White*, 886 F.2d 721, 723-24 (4th 1989).

---

Mass. 1985) (humiliating, denigrating, and frightening verbal abuse may be actionable as state tort, but does not state a Fourteenth Amendment claim). Accordingly, I find that Cash's allegations that Vass made fun of him fail to state a claim of constitutional magnitude.

Specificity is necessary so that prison officials are not required to file unnecessary responses to speculative allegations. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). A prisoner must also identify an actual injury resulting from official conduct. *Strickler v. Waters*, 989 F.2d 1375, 1382-85 (4th Cir. 1993). A showing of injury is required in order to avoid adjudication of trivial claims of deprivation. In this case, Cash provides no facts to support his conclusory allegation. Therefore, I find that Cash has failed to state a constitutional claim and will grant defendants' motion for summary judgment.

### V.

Cash alleges that Nurse Vass violated his "right to be free from the pretense of official right to act made by one who has no such right, any acts by him/her when the office does not confer on him/her any such authority." To state a claim for relief under §1983, a plaintiff must allege facts indicating that plaintiff has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988). I cannot discern what Cash is trying to allege in this claim and he provides no facts in support of this claim. Accordingly, I find that Cash has failed to state a constitutional claim against Nurse Vass and, therefore, I will dismiss this claim.

### VI.

Cash alleges that Lt. Newby and Superintendent Townley retaliated against him by charging him with the institutional infraction of "delaying and hindering," which ultimately resulted in his transfer to a different, higher security facility. It is well settled that state officials may not retaliate against an inmate for exercising his constitutional rights, including his right to access the courts. *See American Civ. Liberties Union v. Wicomico County*, 999 F.2d 780, 785

(4th Cir. 1993). However, in order to sustain a cognizable retaliation claim under § 1983, an inmate must point to specific facts supporting his claim of retaliation. *White*, 886 F.2d at 723-24. "[B]are assertions of retaliation do not establish a claim of constitutional dimension." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (federal courts should regard inmate claims of retaliation with "skepticism"). In this case, Cash does not point to any facts that suggest that the defendants' charging Cash with an institutional infraction and then transferring him to a different facility based on his new and higher security classification was based on a retaliatory motive. Moreover, prisoners do not have a constitutional right to a particular security classification or to be housed at a particular institution. *See Meachum v. Fano*, 427 U.S. 215 (1976) (holding that an inmate has no right to be housed in any particular facility). Accordingly, the court finds that Cash's conclusory allegation of retaliation fails to state a claim and, therefore, I will grant defendants' motion for summary judgment.

## VII.

For the reasons stated, the court grants defendants' motion for summary judgment.

**ENTER**: This 19th day of March, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE